IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PHOEBE RENEE HALLIWELL, )
    a/k/a RONNY DARNELL )
)
    Plaintiff, )
)
v. ) Case No. CIV-18-1152-D
)
JOE ALLBAUGH, et al., )
)
    Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff Phoebe Renee Halliwell, a/k/a Ronny Darnell,[1] a state inmate appearing *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, alleging violations of her constitutional rights. (ECF No. 1). Currently before the Court are three pleadings: (1) Plaintiff's Amended Complaint (ECF No. 11-1); (2) Plaintiff's Motion for Appointment of Counsel (ECF No. 4); and (3) Plaintiff's Motion for a Preliminary Injunction. (ECF No. 6). Chief United States District Judge Joe Heaton referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). A review of the complaint has been conducted pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B). On January 7, 2019, this matter was transferred to United States District Judge Timothy D. DeGiusti. *See* ECF No. 14.

---

[1] Plaintiff is currently incarcerated in the custody of the Department of Corrections (DOC) under the name "Ronny Darnell." *See* https://okoffender.doc.ok.gov. However, Plaintiff has submitted documentation which reflects Plaintiff's legal name change from Ronny Darnell to Phoebe Halliwell. *See* ECF No. 11-1:4. Based on the legal name change and Plaintiff's identification as female, the Court will refer to Plaintiff as Ms. Halliwell, and will use female-specific pronouns.

Based on that review, the Court should: (1) dismiss the Amended Complaint in its entirety, without prejudice, for failure to state a claim, (2) deny Plaintiff's Motion for Appointment of Counsel, and (3) deny Plaintiff's Motion for a Preliminary Injunction.

## I. SCREENING REQUIREMENT

The Court must review each complaint in which a prisoner seeks redress against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court likewise must review each case brought by a prisoner with respect to prison conditions and each case in which a plaintiff proceeds *in forma pauperis*. 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2). The Court is required to dismiss the complaint or any portion of the complaint that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

## II. STANDARD OF REVIEW

The Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Since Ms. Halliwell is proceeding *pro se*, her Amended Complaint must be construed liberally. *See id*. at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of

conduct,"[2] then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248 (10th Cir. 2008).

A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level" on the assumption "that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation and citation omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). As a result, courts "look to the specific allegations in the complaint to determine

---

[2] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

3

whether they plausibly support a legal claim for relief." *Kay,* 500 F.3d at 1218 (quotation marks and citations omitted).

Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*).

### III. NAMED DEFENDANTS

Plaintiff's claims arise from Defendants' alleged failure to treat Plaintiff's Gender Dysphoria (GD) during Ms. Halliwell's incarceration at Cimarron Correctional Facility (CCF). Plaintiff asserts claims against eight Defendants: (1) Joe Allbaugh, Director of the DOC; (2) Joel McCurdy, DOC's Chief Medical Officer; (3) Buddy Honaker, DOC Medical Services Administrator and member of the Personal Identity Administrative Review Authority Review Board (PIARA); (4) Patricia Jones, psychiatrist who treated Plaintiff while she was incarcerated at Davis Correctional Facility (DCF); (5) Raymond Byrd, Warden at CCF; (6) FNU Rashti, Health Services Administrator at CCF; (7) FNU Paine, physician at CCF; and (8) FNU Beard, physician at CCF. (ECF No. 11-1:2-4).

### IV. FACTUAL ALLEGATIONS

Plaintiff, a 50-year-old individual who was born male, has identified as female since age two, and began taking "Black Market" hormones at age 16. (ECF No. 11-1:4, 13-14). Ms. Halliwell was incarcerated on January 10, 2005, and arrived at Lexington Assessment and Reception Center on January 13, 2006, when Plaintiff contends DOC "took [her] hormones from her and told her that she would not be allowed to continue taking

4

hormones while in prison." (ECF No. 11-1:4). In June of 2015, Plaintiff was transferred to DCF where she was evaluated by Defendant Jones in July of 2017. (ECF No. 11-1:4-6). Dr. Jones allegedly diagnosed Plaintiff with a "severe case" of GD, and promised Plaintiff a follow-up visit in 3 weeks. (ECF No. 11-1:5-6). Three months passed with no word from Dr. Jones and Ms. Halliwell was transferred to CCF. (ECF No. 11-1:6). Plaintiff became aware that other inmates at CCF were receiving hormone therapy and Plaintiff began seeking the same. *Id.*

In her efforts, Plaintiff saw Dr. Paine in December 2017, who stated that Dr. Jones had reported that Ms. Halliwell did not meet the criteria for GD. *Id.* Plaintiff requested a second opinion and Dr. Paine arranged an appointment for Plaintiff to see another psychiatrist, Dr. Hennenigan. *Id.* At the February 14, 2018 appointment with Dr. Hennenigan, Plaintiff states that the psychiatrist found that Plaintiff met all six criteria for GD. *Id.* Dr. Hennenigan told Plaintiff that she required treatment, and logged the GD diagnosis and request for treatment in Plaintiff's records. *Id.* Three months passed and Plaintiff sought a copy of her medical records by filing a request with Ms. Rashti. *Id.* Ms. Rashti informed Plaintiff that there was no diagnosis of GD in her medical records. *Id.*

Plaintiff began seeing a new physician, Dr. Beard, who authorized: (1) a change of Plaintiff's medications—an elimination of HTCZ (a water pill) and an increase of a blood pressure medication, Spironolactone, from 25 mg per day to 100 mg per day and (2) a bra order for Plaintiff. (ECF No. 11-1:5). Plaintiff states that the increased medication helped treat her GD, but after 30 days, "DOC" told Defendant Beard to take Plaintiff off of Spironolactone and cancel the bra order. (ECF No. 11-1:6).

5

Plaintiff attempted to contact Dr. Hennenigan, via a request to staff, but Defendant Rashti allegedly blocked the correspondence. *Id.* Plaintiff contends that "DOC" is erasing the GD diagnosis from her medical file and directing CCF to not treat Plaintiff's GD. *Id.* Plaintiff alleges that other transgender inmates at CCF are receiving hormone therapy and she is being discriminated against by failing to receive the same treatment. *Id.*

In her Amended Complaint, Ms. Halliwell specifies three distinct causes of action:

- Deliberate indifference to medical needs in violation of the Eighth Amendment;

- Discrimination in violation of Equal Protection; and

- Unsafe living conditions in violation of the Eighth Amendment.

(ECF No. 11-1:16). The Court should dismiss these claims against all Defendants.

## V. DISMISSAL OF PLAINTIFF'S EIGHTH AMENDMENT MEDICAL CLAIM

Plaintiff alleges that she is being denied medical care for her GD in violation of the Eighth Amendment. The Court should conclude that Ms. Halliwell has failed to state an Eighth Amendment claim for which relief may be granted.

The Constitution, through its Eighth Amendment, imposes on state governments an "obligation to provide medical care for those whom [they are] punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if they fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), an inmate cannot hold a prison official liable unless the inmate shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the inmate's] serious medical

needs," *Gamble*, 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

The Tenth Circuit "recognize[s] two types of conduct [that] may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "The test for constitutional liability" in either case "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). To state an Eighth Amendment claim, Ms. Halliwell must allege: (1) objectively, the harm she complains of is sufficiently "serious" to merit constitutional protection and (2) Defendants were subjectively aware of a substantial risk to Plaintiff's health or safety and acted in purposeful disregard of that risk. *See Martinez v. Beggs*, 563 F.3d 1082, 1088-1089 (10th Cir. 2009).

With regard to the objective component, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). To establish the subjective component—deliberate indifference to a substantial risk of harm—Plaintiff must show that the prison official in question acted with a "culpable state of mind." *Mata*, 427 F.3d at 751. The subjective element is satisfied if the official "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1970). While a defendant may be liable in a supervisory capacity, the plaintiff must allege that the defendant: (1) promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm and (3) acted with the state of mind required to establish the alleged constitutional deprivation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

The Court recognizes that Ms. Halliwell's GD satisfies the objective component under the Eighth Amendment. *See Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). Thus, the only substantive issue is whether Plaintiff has adequately alleged that Defendants exhibited "deliberate indifference" to Ms. Halliwell's serious medical need.

Plaintiff alleges that she is being denied treatment for GD because "someone is removing or erasing Medical Records out of her file"—namely the two diagnoses of GD that she claims Dr. Jones and Dr. Hennenigan had assessed. (ECF No. 11-1:6). According to Ms. Halliwell, the erasures are preventing her from receiving treatment for her GD. *Id.* Specifically, Ms. Halliwell states: "(DOC) is telling (CCF) not to provide Ms. Halliwell with anything for her (GD). This lack of professionalism in (DOC's) conduct shows deliberate indifference toward Ms. Halliwell's 'serious medical needs.'" *Id.*

"[A] showing of deliberate refusal to provide medical attention … coupled with falsification of medical records may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983." *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir.

8

1997). Here, Ms. Halliwell has alleged that her medical records have been altered to remove the diagnosis of GD. As a result, Plaintiff alleges that she is being denied proper medical care. But Ms. Halliwell does not state that any of the named Defendants were responsible for altering her records or refusing her treatment. Instead she states that that "(DOC) changes [Plaintiff's medical records] to read it the way that they want it to say" and deliberate indifference is being shown through DOC's "lack of professionalism" by ordering CCF to refuse Plaintiff treatment. (ECF No. 11-1:6, 16).

Without more, the Court should consider Plaintiff's reliance on the Eighth Amendment and a "lack of professionalism," as mere "labels and conclusions," which are insufficient to meet the pleading standard outlined above and which renders the Complaint legally deficient. *See Twombly*, 550 U.S. at 555; *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007) (explaining "that, to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated.").

In a case such as this one where Ms. Halliwell has brought claims against more than one defendant, "it is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1250 (10th Cir. 2008) (emphasis in original). Ms. Halliwell has failed to do so and the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

9

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Without more information regarding how Plaintiff believes that each Defendant had exhibited deliberate indifference to her serious medical need involving GD, the Court should dismiss the Complaint for failure to state a claim upon which relief may be granted.

A liberal reading of Plaintiff's Amended Complaint suggests some sort of "supervisory"-type liability against Defendants Allbaugh, McCurdy, and Byrd. For example, Plaintiff alleges that Defendant Allbaugh is "legally responsible for the overall operations of the [DOC] and … [CCF]"; Defendant McCurdy "is legally responsible for the Medical operations of all institutions under its jurisdiction, including [CCF];" and Defendant Byrd is "legally responsible for the operations of [CCF.]" (ECF No. 11-1:3-4).

As stated, for a defendant to be liable in a supervisory capacity, the plaintiff must allege that the defendant: (1) promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm and (3) acted with the state of mind required to establish the alleged constitutional deprivation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Here, Ms. Halliwell alleges a DOC employee, Dr. Cooper, had written a "new policy" for treatment of GD, but that individuals at DCF had refused to follow it. (ECF No. 11-1:4). To the extent that Plaintiff has alleged that Defendants Allbaugh, McCurdy, and Byrd are somehow legally responsible for failing to follow this "new policy," Ms. Halliwell has still fallen short of stating a claim for supervisory liability for these individuals based on Plaintiff's failure to allege that any of these Defendants had acted with the requisite state of mind. *See supra*. Accordingly, the Court should dismiss Plaintiff's Eighth Amendment

claim for failure to treat her GD, to the extent the same is asserted against any Defendant directly or in a supervisory capacity.

## VI. DISMISSAL OF PLAINTIFF'S EQUAL PROTECTION CLAIM

Plaintiff alleges a violation of Equal Protection because other inmates are being treated for GD, while she is not. The Court should conclude that Ms. Halliwell has failed to state an Equal Protection claim for which relief may be granted.

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439; *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006). To state a valid claim for Equal Protection, a plaintiff must first allege that she had been intentionally treated differently than similarly situated individuals. *See City of Cleburne*, 473 U.S. at 439; *see also SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) ("plaintiff must [first] show [s]he … was 'intentionally treated differently from others similarly situated'" (citation omitted)). According to the Tenth Circuit, "It is hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003). Rather, in order to establish an equal protection violation, a plaintiff must show a "discriminatory purpose" leading to disparate treatment. *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279 (1979). "'Discriminatory purpose' [ ] implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker… selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Id.* at 279 (citations omitted).

11

In support of her claim alleging an Equal Protection violation, Ms. Halliwell states:

> [T]he fact re-manes [sic] that there are still other Transgender Females here at (CCF) who are receiving Hormones and all of them started there [sic] Hormones after this new Policy went into affect. [sic] but who had never taken Hormones before and they had no trouble getting started on there [sic] Hormone Therapy, which shows … discrimination toward Plaintiff.

(ECF No. 11-1:6).[3]

Liberally construing Plaintiff's allegations, the Court may assume that Ms. Halliwell has alleged that she is "similarly situated" to other transgender inmates at CCF who are receiving hormone therapy treatment. However, Plaintiff has failed to allege that any of the Defendants had acted with purposeful discrimination to deny her hormone treatment, only that she is being denied treatment while others are not. Accordingly, the Court should dismiss Plaintiff's Equal Protection claim against all Defendants. *See Robbins*, 519 F.3d 1242, 1253 (10th Cir. 2008) (dismissing inmate's Equal Protection claim because it "fails to differentiate among individual defendants and specify which defendants are alleged to have taken which particular actions.").

## VII. DISMISSAL OF PLAINTIFF'S CONDITIONS OF CONFINEMENT CLAIM

Under a subsection of the Amended Complaint titled "Legal Claims and Violations," Ms. Halliwell alleges "unsafe living conditions" in violation of the Eighth Amendment. (ECF No. 1:16). The Court should dismiss this claim as conclusory.

An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective

---

[3] Plaintiff also alleges that these actions show deliberate indifference, ECF No. 11-1:6, but the allegations more aptly allege an Equal Protection violation.

component associated with the deficiency claimed. *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes* v. Chapman, 452 U.S. 337, 347 (2001). "Alternatively, a condition must be sufficiently serious so as [to] constitute a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993)). In turn, "[t]he subjective component requires that a ... prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297, (1991)). The subjective component is met if the prisoner shows the defendants "knew he faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)). On the other hand, if an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability. *See DeSpain v. Uphoff,* 264 F.3d 965, 975 (10th Cir. 2001). This is "because the Eighth Amendment requires only 'reasonable safety,'" so that "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide,* 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer,* 511 U.S. at 844–45).

Aside from her claim of "unsafe living conditions," Plaintiff's Amended Complaint is devoid of any allegations that conditions at CCF were objectively "sufficiently serious" to state a claim under the Eighth Amendment. *See* ECF No. 11-1. Likewise, Ms. Halliwell

has failed to allege that any Defendant had acted with the requisite state of mind in acting with deliberate indifference to Ms. Halliwell's health or safety. *See* ECF No. 11-1.

The Court should conclude that Plaintiff's allegations are too conclusory to demonstrate either the objective or subjective components of a valid conditions of confinement claim. As the Tenth Circuit has stated: "[P]laintiff must do more than claim a foul. He must state with sufficient particularity what the foul involved, who was involved, and when and where it took place. It is not sufficient to use legal jargon and bald conclusions." *Moore v. Trapp,* 931 F.2d 63, 1991 WL 65074, Westlaw op. at *2 (10th Cir. 1991) (affirming dismissal of § 1983 complaint alleging overcrowding, plumbing problems, no physical exercise, no lights, no personal sanitation, inadequate diet and lack of access to the courts).

While Ms. Halliwell has made a conclusory allegation that she has been subjected to "unsafe living conditions," she has not alleged any facts to show how these conditions had adversely affected her. Because Plaintiff states "no specific facts connecting the allegedly unconstitutional conditions with his own experiences [at the Center], or indicating how the conditions caused him injury[,]" *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993), her conclusory allegations are insufficient to state a claim for relief. *Id.* at 289-90; *See, e.g., Shifrin v. Fields,* 39 F.3d 1112, 1114 (10th Cir. 1994) ("Absent allegations of 'deliberate indifference' by prison officials and of a 'specific deprivation' of a 'human need,' an Eighth Amendment claim based on prison conditions must fail.") (*quoting Wilson,* 501 U.S. at 303-05). For these reasons, Plaintiff's claims regarding the

conditions of her confinement should be dismissed for failure to state a claim upon which relief can be granted.

## VIII. PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

If the Court adopts the above recommendation, the undersigned would also recommend denying Plaintiff's Motion for Appointment of Counsel (ECF No. 4).

## IX. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff has filed a Motion for a Temporary Restraining Order and a Preliminary Injunction. (ECF No. 6). This Motion seeks injunctive relief in the form of medical care for her GD, presumably in the form of hormone therapy, as alleged in the Amended Complaint, although the Motion for Preliminary Injunction does not specify the same. *See* ECF No. 6.

As set forth above, Plaintiff's GD-related constitutional claims are subject to dismissal for failure to state a claim. These findings render Plaintiff's parallel request for injunctive relief moot. Regardless, Plaintiff has not met her burden to establish the requirements for a preliminary injunction. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the applicant generally must satisfy four elements: (1) a substantial likelihood that he or she will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir.

2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little*, 607 F.3d at 1251. Here, Plaintiff seeks relief that is mandatory: the entry of Ms. Halliwell's primary requested form of relief (medical treatment, including hormone replacement therapy) would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259. Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored interim relief. *Id.* at 1261.

For the reasons set forth above, Plaintiff cannot show "a substantial likelihood of success on the merits" with respect to her constitutional claims, which are echoed in the Motion for a Preliminary Injunction. *See Kikumura*, 242 F.3d at 955. It follows that Plaintiff indisputably cannot meet a "heightened standard" or make a "strong showing" with regard to the likelihood of success on the merits of this claim, as required for the Court

16

to order Plaintiff's requested mandatory injunction. *See Schrier*, 427 F.3d at 1261; *Little*, 607 F.3d at 1251.

In addition, Plaintiff has not met her heightened burden of demonstrating that the requested injunctive relief is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or federal law. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

Even if Plaintiff could succeed on her constitutional claims, the assertions in her Motion do not justify the Court immediately mandating that Plaintiff's requested medical treatment be undertaken, which would interfere with prison management. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner*, 482 U.S. at 84-86.

For all of these reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction (ECF No. 6).

## X. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should: (1) **dismiss, without prejudice,** the Amended Complaint **(ECF No. 11-1)** in its entirety; (2) **deny Plaintiff's Motion for Appointment of Counsel (ECF No. 4)**; and (3) **deny Plaintiff's Motion for a Preliminary Injunction (ECF No. 6)**.

Plaintiff is hereby advised of her right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **February 1, 2019.** *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XI. STATUS OF THE REFERRAL

This Report and Recommendation terminates the referral.

ENTERED on January 15, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE