IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHOEBE RENEE' HALLIWELL, )<br>a/k/a RONNY DARNELL )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOE ALLBAUGH, et al., )<br>)<br>    Defendants. ) | Case No. CIV-18-1152-D |

## REPORT AND RECOMMENDATION

Plaintiff, Phoebe Renee' Halliwell, a/k/a Ronny Darnell,[1] a state inmate appearing *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, alleging violations of her constitutional rights. (ECF No. 1). Currently before the Court is Plaintiff's Second Amended Complaint. (ECF No. 20). United States District Judge Timothy D. DeGiusti referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). A review of the Second Amended Complaint has been conducted pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B).

Based on that review, the Court should: (1) dismiss, without prejudice, Plaintiff's Equal Protection claim; (2) dismiss, without prejudice, Plaintiff's Eighth Amendment conditions of confinement claim; (3) dismiss, with prejudice, Plaintiff's Due Process claim;

---

[1] Plaintiff is currently incarcerated in the custody of the Department of Corrections (DOC) under the name "Ronny Darnell." *See* https://okoffender.doc.ok.gov. However, Plaintiff has submitted documentation which reflects Plaintiff's legal name change from Ronny Darnell to Phoebe Renee' Halliwell. *See* ECF No. 11-4. Based on the legal name change and Plaintiff's identification as transgender female, the Court will refer to Plaintiff as Ms. Halliwell, and will use female-specific pronouns.

and (4) conclude that Plaintiff has stated a valid Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against all seven Defendants.

## I. SCREENING REQUIREMENT

The Court must review each complaint in which a prisoner seeks redress against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court likewise must review each case brought by a prisoner with respect to prison conditions and each case in which a plaintiff proceeds *in forma pauperis*. 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2). The Court is required to dismiss the complaint or any portion of the complaint that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

## II. STANDARD OF REVIEW

The Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Since Ms. Halliwell is proceeding *pro se*, her Amended Complaint must be construed liberally. *See id*. at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of

conduct,"[2] then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248 (10th Cir. 2008).

A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level" on the assumption "that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation and citation omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). As a result, courts "look to the specific allegations in the complaint to determine

---

[2] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

whether they plausibly support a legal claim for relief." *Kay,* 500 F.3d at 1218 (quotation marks and citations omitted).

Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal).*

### III. NAMED DEFENDANTS

Plaintiff's claims arise from Defendants' alleged failure to treat Plaintiff's Gender Dysphoria (GD) during Ms. Halliwell's incarceration at Cimarron Correctional Facility (CCF). Plaintiff asserts claims against seven Defendants: (1) Joe Allbaugh, Director of the DOC; (2) Joel McCurdy, DOC's Chief Medical Officer; (3) Buddy Honaker, DOC Medical Services Administrator and member of the Personal Identity Administrative Review Authority Review Board (PIARA); (4) Patrisha Jones, psychiatrist who treated Plaintiff while she was incarcerated at Davis Correctional Facility (DCF); (5) Raymond Byrd, Warden at CCF; (6) FNU Rashti, Health Services Administrator at CCF; and (7) FNU Paine, physician at CCF. (ECF No. 20:1-3).

### IV. FACTUAL ALLEGATIONS/CLAIMS FOR RELIEF

Plaintiff, a 50-year-old individual who was born male, has identified as female since age two, and began taking "Black Market" hormones at age 16. (ECF No. 20:16). Ms. Halliwell was incarcerated on January 10, 2005, and arrived at Lexington Assessment and Reception Center on January 13, 2006, when Plaintiff contends DOC "took [her] Hormones from [her] and told her that she would not be allowed to continue taking

4

Hormones while in Prison." (ECF No. 20:3). In June of 2015, Plaintiff was transferred to DCF where she was evaluated by Defendant Dr. Jones in July of 2017. (ECF No. 20:4). Dr. Jones allegedly diagnosed Plaintiff with a "severe case" of GD, and promised Plaintiff a follow-up visit in 3 weeks. (ECF No. 20:4). Three months passed with no word from Dr. Jones and Ms. Halliwell was transferred to CCF. (ECF No. 20:4). Plaintiff became aware that other transgender inmates at CCF were receiving hormone therapy and Plaintiff began seeking the same. (ECF No. 20:4).

In her efforts, Plaintiff saw Defendant Dr. Paine in December 2017, who stated that Dr. Jones had reported that Ms. Halliwell did not meet the criteria for GD. (ECF No. 20:4, 16). Plaintiff requested a second opinion and Dr. Paine arranged an appointment for Plaintiff to see another psychiatrist, Dr. Hennenigan. (ECF No. 20:4, 16). At the February 14, 2018 appointment, Plaintiff states that Dr. Hennenigan found that Ms. Halliwell met all six criteria for GD. (ECF No. 20:4, 16). Dr. Hennenigan allegedly told Plaintiff that she required treatment, and logged the GD diagnosis into Plaintiff's medical record. (ECF No. 20:4-5, 17). On April 10, 2018, Plaintiff sought a copy of her medical records by filing a request with Defendant Ms. Rashti. (ECF No. 20:5, 17). Ms. Rashti informed Plaintiff that there was no diagnosis of GD in her medical records. (ECF No. 20:5, 17).

On September 30, 2018, Plaintiff again saw Dr. Hennenigan and inquired regarding the "missing" diagnosis. (ECF No. 20:5). According to Plaintiff, Dr. Hennenigan stated that Defendants Allbaugh, McCurdy, Honaker, and Jones told Dr. Hennenigan that "they

5

disagreed with his diagnosis, and they stated that Ms. Halliwell will not be treated for (GD), and that he needed to change her diagnosis." (ECF No. 20:5, 17).

Plaintiff began seeing a new physician, Dr. Beard, who authorized an increase of Plaintiff's blood pressure medication, Spironolactone, from 25 mg. per day to 100 mg. per day. (ECF No. 20:5). Plaintiff states that the increased medication helped treat her GD, but after 30 days, Defendants Allbaugh, McCurdy, Honaker, and Jones told Dr. Beard to take Plaintiff off of Spironolactone because "Ms. Halliwell is not to be treated for (GD) at all[.]" (ECF No. 20:5).

Plaintiff attempted to contact Dr. Hennenigan, via a request to staff, but Ms. Rashti allegedly blocked the correspondence, instead answering the requests herself. (ECF No. 20:6). Finally, Plaintiff alleges that other transgender inmates at CCF are receiving hormone therapy and Defendants are discriminating against her by failing to give her the same treatment received by other transgender inmates (ECF No. 20:8).

In her Amended Complaint, Ms. Halliwell specifies four distinct causes of action:

- Discrimination in violation of Equal Protection;
- Unsafe living conditions in violation of the Eighth Amendment;
- A Violation of Due Process; and
- Deliberate indifference to serious medical needs in violation of the Eighth Amendment.

(ECF No. 20:18).

## V. PLAINTIFF'S EQUAL PROTECTION CLAIM

Plaintiff alleges a violation of her Equal Protection rights because all seven Defendants "are denying Ms. Halliwell the services and benefits they provide to other

inmates because she is Transgender." (ECF No. 20:6). Specifically, in the Second Amended Complaint, Ms. Halliwell states:

> [T]he fact remains that there are still at least two other Transgender Females just like Ms. Halliwell, who are receiving their Hormone Therapy, and this shows … discrimination toward Plaintiff.

(ECF No. 20:8).[3] The Court should conclude that Ms. Halliwell has failed to state an Equal Protection claim for which relief may be granted.

In the First Amended Complaint, Plaintiff asserted nearly identical allegations. *See* ECF No. 11-1:6. The undersigned recommended a dismissal of that Equal Protection Claim for failure to state a claim and the District Judge adopted the recommendation. (ECF Nos. 16 & 21). Now, the Equal Protection Claim set forth in the Second Amended Complaint should be dismissed based on the reasoning noted by Judge DeGiusti, in adopting the undersigned's previous recommendation:

> Because Plaintiff's claim is not based on allegations of disparate treatment of a class of persons, she is asserting what is known as a "class of one" equal protection claim. *See A.M. v. Holmes*, 830 F.3d 1123, 1166-67 (10th Cir. 2016) (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). To state a plausible claim under this theory, Plaintiff must allege specific and detailed facts to "establish that others, similarly situated in every material respect, were treated differently" from Plaintiff. *A.M.*, 830 F.3d at 1167 (internal quotation omitted); *see Kan. Penn*, 656 F.3d at 1216-17. Plaintiff fails to satisfy this standard by simply alleging that two inmates have received a treatment for GD that she desires. Therefore, the Court finds that Plaintiff has failed to state a plausible equal protection claim.

(ECF No. 21:4).

---

[3] Plaintiff also alleges that these actions show deliberate indifference, ECF No. 20:8, but the allegations more aptly allege an Equal Protection violation.

7

Although Judge DeGiusti was ruling on Plaintiff's Objection to the Report and Recommendation,[4] Ms. Halliwell offers nothing more in support of her Equal Protection argument in her Second Amended Complaint. *Compare* ECF No. 19:5 (Plaintiff's Objection) *with* ECF No. 20:6, 8 (Plaintiff's Second Amended Complaint). Thus, for the same reasoning applied by Judge DeGiusti previously, the Court should again dismiss Plaintiff's Equal Protection Claim as set forth in the Second Amended Complaint.

## VI. PLAINTIFF'S CONDITIONS OF CONFINEMENT CLAIM

Under a subsection of the Second Amended Complaint titled "Legal Claims and Violations," Ms. Halliwell alleges "unsafe living conditions" in violation of the Eighth Amendment. (ECF No. 20:18). The Court should dismiss this claim as conclusory.

An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency claimed. *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (2001). "Alternatively, a condition must be sufficiently serious so as [to] constitute a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993)). In turn, "[t]he subjective component requires that a ... prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297, (1991)). The subjective component is met if the prisoner shows the

---

[4] (ECF No. 19).

defendants "knew he faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)). On the other hand, if an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability. *See DeSpain v. Uphoff,* 264 F.3d 965, 975 (10th Cir. 2001). This is "because the Eighth Amendment requires only 'reasonable safety,'" so that "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide,* 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer,* 511 U.S. at 844–45).

Aside from her claim of "unsafe living conditions," Plaintiff's Second Amended Complaint is devoid of any allegations that conditions at CCF were objectively "sufficiently serious" to state a claim under the Eighth Amendment. Likewise, Ms. Halliwell has failed to allege that any Defendant had acted with the requisite state of mind to exhibit deliberate indifference to Ms. Halliwell's health or safety.

Thus, the Court should conclude dismiss Plaintiff's "conditions of confinement" claim as insufficient. *See, e.g., Shifrin v. Fields,* 39 F.3d 1112, 1114 (10th Cir. 1994) ("Absent allegations of 'deliberate indifference' by prison officials and of a 'specific deprivation' of a 'human need,' an Eighth Amendment claim based on prison conditions must fail.") (*quoting Wilson,* 501 U.S. at 303-05).

## VII. PLAINTIFF'S DUE PROCESS CLAIM

Ms. Halliwell has alleged that Defendant Rashti has violated her Due Process rights by answering a request to staff that Plaintiff had written to Dr. Hennenigan. (ECF No. 20:6). This claim fails as a matter of law.

"[T]here is no independent constitutional right to state administrative grievance procedures." *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013) (citation omitted). This is not to say that a correctional facility can freely obstruct an inmate's ability to use the grievance process. "Where prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). However, inmates do not have a protected liberty interest in pursuing formal grievance procedures and therefore, any separate legal claim based on allegations that prison officials "obstructed due process" must fail. *See Boyd v. Werholtz,* 443 F. App'x 331, 332, n. 2 (10th Cir. 2011) (holding that although a prison official's obstruction of the grievance process may excuse an inmate's non-compliance with the PLRA, it does not create a cause of action under the Constitution); *Sims v. Miller,* 5 F. App'x 825, 828 (10th Cir. 2001) ("insofar as plaintiff contended that CDOC officials had failed to comply with the prison grievance procedures, he had failed to allege the violation of a federal constitutional right"). Accordingly, the Court should dismiss Plaintiff's Due Process claim against Defendant Rashti with prejudice. *See Morris v. Fallin*, Case No. CIV-16-1297-D (W.D. Okla. June 23, 2017) (dismissing, with prejudice, inmate's claim alleging a violation of Due Process based, in part on prison officials' responses to grievances).

## VIII. PLAINTIFF'S EIGHTH AMENDMENT MEDICAL CLAIM

Plaintiff alleges that she is being denied medical care for her GD in violation of the Eighth Amendment. The Court should conclude that Ms. Halliwell has stated a claim under the Eighth Amendment.

The Constitution, through its Eighth Amendment, imposes on state governments an "obligation to provide medical care for those whom [they are] punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if they fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), an inmate cannot hold a prison official liable unless the inmate shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the inmate's] serious medical needs," *Gamble*, 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Gamble*, 429 U.S. at 106.

The Tenth Circuit "recognize[s] two types of conduct [that] may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "The test for constitutional liability" in either case "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). To state an Eighth Amendment claim, Ms. Halliwell must allege: (1) objectively,

the harm she complains of is sufficiently "serious" to merit constitutional protection and (2) Defendants were subjectively aware of a substantial risk to Plaintiff's health or safety and acted in purposeful disregard of that risk. *See Martinez v. Beggs*, 563 F.3d 1082, 1088-1089 (10th Cir. 2009).

With regard to the objective component, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). To establish the subjective component— deliberate indifference to a substantial risk of harm—Plaintiff must show that the prison official in question acted with a "culpable state of mind." *Mata*, 427 F.3d at 751. The subjective element is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1970).

Plaintiff alleges that all seven Defendants are aware that: (1) Ms. Halliwell is a Transsexual, (2) she suffers from GD, (3) she has had twice attempted to castrate herself, and (4) she is at risk of irreparable injury if not treated for her GD. (ECF No. 20:8). The Court recognizes that Ms. Halliwell's GD satisfies the objective component under the Eighth Amendment. *See Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). Thus, the only substantive issue is whether Plaintiff has adequately alleged that each Defendant

exhibited "deliberate indifference" to Ms. Halliwell's serious medical need. The Court should answer this question affirmatively.

### A. Defendants Allbaugh, McCurdy, Honaker, and Jones

As discussed, Plaintiff contends that Dr. Hennenigan, psychiatrist at CCF, found that Plaintiff met all six criteria for GD, and logged the diagnosis into Plaintiff's medical record. (ECF No. 20:4, 16). Ms. Halliwell alleges that Defendants Allbaugh, McCurdy, Honaker, and Jones told Dr. Hennenigan that "he needed to change [Plaintiff's] diagnosis [of GD]" because they disagreed with the diagnosis and Plaintiff would not be treated for the disorder. (ECF No. 20:5, 17); *see* ECF No. 20:9 ("Defendant's [sic] Allbaugh, McCurdy, Honaker, and Jones said not to treat Ms. Halliwell for (GD)"). Plaintiff also alleges that Dr. Beard had prescribed Plaintiff Spironolactone, which was helping with the GD, but Defendants Allbaugh, McCurdy, Honaker, and Jones told Dr. Beard to "take [Plaintiff] off of her Sprionolactone … [and] [Ms. Halliwell] [was] not to be treated for (GD) at all, and if [Dr. Beard] wanted to keep her job, then she would stop trying to help Ms. Halliwell." (ECF No. 20:5-6).

Ms. Halliwell has alleged that Defendants Allbaugh, McCurdy, Honaker, and Jones: (1) ordered Dr. Hennenigan to alter Plaintiff's records and remove the diagnosis of GD from Plaintiff's medical file and (2) refused to treat Plaintiff for her GD which had been diagnosed by two previous psychiatrists. At this stage, the Court should conclude that Ms. Halliwell's allegations sufficiently state a claim for deliberate indifference against these four Defendants. *See Green v. Branson,* 108 F.3d 1296, 1304 (10th Cir. 1997) ("[A] showing of deliberate refusal to provide medical attention, … coupled with falsification of

medical records may give rise to an Eighth Amendment violation … cognizable under 42 U.S.C. § 1983."); *Sherman v. Klenke*, 67 F. Supp. 3d 1210, 1216 (D. Colo. 2014), *aff'd in part, rev'd on other grounds in part and remanded*, 653 F. App'x 580 (10th Cir. 2016) (inaction by one prison official in failing to treat an inmate in accordance with a recommendation from another prison official "may support an inference … [of] 'conscious disregard'" toward the inmate to support an Eighth Amendment claim); *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012) (holding that plaintiff raised inference that defendants acted with deliberate indifference where record showed that officials ignored recommendations of specialists and treating physicians), *overruled on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014)).

### B. Defendant Byrd

Plaintiff states that she talked with Defendant Byrd about not being treated for her GD—specifically telling him that "she would take care of the problem herself by performing auto-castration on herself." (ECF No. 20:9). According to Ms. Halliwell, Defendant Byrd refused to treat Plaintiff's GD based on orders from Defendants Allbaugh, McCurdy, Honaker, and Jones. (ECF No. 20:9). Based on this conversation, the Court should conclude that Plaintiff has sufficiently alleged that Defendant Byrd had acted with the requisite deliberate indifference to state a claim under the Eighth Amendment. *See Farmer*, 511 U.S. at 837 (to satisfy the subjective element of the Eighth Amendment, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

### C. Defendants Rashti and Paine

In her attempt to seek treatment, Plaintiff states that she was called in to Defendant Rashti's office where Defendants Rashti and Paine told Plaintiff "she needed to stop filing sick call request[s] and Request to Staff's [sic] and Grievances Medical for Hormones … because she was not getting any of them." (ECF No. 20:9). Plaintiff has already alleged that these Defendants were aware of Plaintiff's diagnosis and threat of self-harm if not treated. (ECF No. 20:8). Accordingly, the Court should conclude that these allegations against Defendants Rashti and Paine regarding their refusal to treat Plaintiff should result in a conclusion Plaintiff has stated an Eighth Amendment claim against these Defendants.

Plaintiff has also alleged that after she found out that her diagnosis of GD had been removed from her records, she attempted to contact Dr. Hennenigan, who had made the diagnosis, but "Defendant Rashti (HSA) would not allow Ms. Halliwell's request to get to Dr. Hennenigan." (ECF No. 20:6). This allegation states an additional Eighth Amendment claim against Defendant Rashti. *See Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (noting that deliberate indifference can be found by a prison official's "preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition.").

### IX. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should: (1) dismiss, without prejudice, Plaintiff's Equal Protection claim; (2) dismiss, without prejudice, Plaintiff's Eighth Amendment conditions of confinement claim; (3) dismiss, with prejudice, Plaintiff's Due Process claim; (4) conclude that Plaintiff

has stated a valid claim Eighth Amendment claim against Defendants Allbaugh, McCurdy, Honaker, and Jones for ordering Dr. Hennenigan to remove the diagnosis of Plaintiff's GD from her medical record and thereafter refusing to treat the condition; (5) conclude that Plaintiff has stated a valid claim Eighth Amendment claim against Defendants Byrd, Rashti, and Paine for refusing treatment for Plaintiff's GD; and (6) conclude that Plaintiff has stated a valid claim Eighth Amendment claim against Defendant Rashti for denying Plaintiff access to Dr. Hennenigan.

Plaintiff is hereby advised of her right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **April 15, 2019**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## X. STATUS OF THE REFERRAL

This Report and Recommendation does not terminate the referral.

ENTERED on March 27, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE